UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ART TECHNOLOGY GROUP, INC., a Delaware corporation, | : : : | Civil Action No. _____ |
| Plaintiffs, | : : | **COMPLAINT** |
| v. | : : | JURY TRIAL DEMANDED |
| PURITAN'S PRIDE, INC., a New York corporation, | : : : : | |
| Defendant. | : : | |

For its Complaint against Defendant Puritan's Pride, Inc. ("Puritan"), Plaintiff Art Technology Group, Inc. ("ATG") alleges as follows:

## INTRODUCTION

1. This is an action for damages arising out of Puritan's failure to pay for services rendered under Master License Agreement No. NBTY0608, which was entered into by and between Puritan and ATG on or about June 12, 2008 (the "Agreement"). A true and correct copy of the Agreement is attached hereto as Exhibit A.

2. From July 2008 to December 2008, ATG rendered services for Puritan pursuant to the Agreement. These services included consultation regarding the planning, development, and set-up of Puritan's website. ATG issued seven invoices for these services from July 2008 to October 2008, and these invoices were paid in full.

3. From October 29, 2008 to January 27, 2009, ATG issued ten separate invoices for professional and training services rendered and the accompanying expenses incurred in connection with these services. In sum, these ten invoices totaled $314,784.03. Puritan did not dispute these invoices, and despite Puritan's promise to

pay all undisputed invoices within thirty days of receipt, Puritan never paid them. To the contrary, on September 8, 2009, Puritan's Chief Executive Officer repudiated these invoices and invited ATG to bring a lawsuit if ATG wanted to receive any additional payment.

4.  On September 10, 2009, ATG sent Puritan a notice of default, requesting payment of the invoices within the thirty-day cure period under the Agreement. Puritan did not respond to the notice of default, nor did it render any payments to ATG.

5.  Accordingly, ATG brings this action for breach of contract against Puritan for damages in the amount of $314,784.03, together with: (1) statutory interest running from the respective due dates of each unpaid invoice and (2) costs and reasonable attorneys' fees as permitted under the Agreement.

## PARTIES

6.  Plaintiff Art Technology Group, Inc. is a Delaware corporation with its principal place of business in Cambridge, Massachusetts.

7.  Defendant Puritan's Pride, Inc. is a New York corporation with its principal place of business in Ronkonkoma, New York. Puritan is a wholly-owned subsidiary of NTBY, Inc. ("NTBY").

## JURISDICTION AND VENUE

8.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because ATG's damages exceed $75,000 and the parties are citizens of different states.

9.  This Court may assert personal jurisdiction over Puritan pursuant to Mass. Gen. Laws ch. 223A, § 10 and the Due Process Clause of the United States

Constitution, as Puritan transacts business in Massachusetts, including business with ATG pursuant to the Agreement.

10. Venue is proper in this Court because a substantial part of the events or omissions giving rise to this claim occurred in Massachusetts. Furthermore, the Agreement denotes ATG's address in Cambridge, Massachusetts.

## STATEMENT OF CLAIM

The Parties

11. ATG is a software business that develops and distributes industry-leading e-Commerce programs. ATG's software products are used across web, e-mail, call-center, and mobile customer communication channels. ATG is also in the business of providing its clients with technical support for its software. Additionally, ATG is in the business of providing "Professional Services" to its customers, including a wide range of service capabilities such as project management, business and technical consulting, training, website development and configuration, and dynamic design – all of which help ensure the customers' successful use of ATG technology.

12. Puritan is a manufacturer of vitamins and nutritional supplements that are distributed domestically and internationally. Upon information and belief, Puritan does business primarily through Internet, mail order, and telephone center sales. According to its website, Puritan is a sophisticated business that has been in operation for over forty years. Indeed, Puritan's website claims that Puritan: (1) has over six million customers; (2) manufactures over 1,000 different vitamins and supplements; (3) produces 1.2 billion tablets, 500 million capsules, 450 million soft-gels, and packages

over 14 million bottles each month; and (4) invested over $130 million in the manufacturing and quality control infrastructure of the company.

The Agreement

13.     ATG and Puritan entered into the Agreement on or around June 12, 2008. The Agreement is comprised of: (1) the Master License Agreement ("MLA"), outlining the general terms and conditions, including Puritan's licensing of ATG's software (Ex. A at 1-7); (2) Addendum A, outlining the terms and conditions of ATG's support and maintenance services for the software (Ex. A at 8-9); and (3) Addendum B, outlining the terms and conditions of the Professional Services to be performed by ATG (Ex. A at 10).

14.     In Addendum B, ATG and Puritan agreed that ATG would provide Professional Services described in mutually-agreeable "Statements of Work." (Addendum B §§ 1.1, 1.2).

15.     The parties further agreed that ATG would bill Puritan on a time and materials basis:

> Charges for Professional Services will be on a time and materials basis unless otherwise specified in the Statement of Work.  ATG charges by the day in accordance with the rates in its then-current Price List.  The Customer shall reimburse ATG for pre-approved, reasonable out-of-pocket expenses incurred by ATG in connection with the performance of the Services.

(Addendum B § 4.1).

16.     Puritan promised to make payments within thirty days of receiving invoices unless Puritan raised a timely, good-faith dispute:

> ATG will invoice Customer for charges and expenses on a regular basis as specified in the Statement of Work, and, absent manifest error, Customer shall pay all such invoiced amounts not subject to a good faith dispute within thirty (30) days of the invoice date.  If Customer fails to

make payments when due, ATG, in addition to its other rights and remedies, will have the right to terminate Professional Services immediately and to recover its reasonable costs and expenses, including reasonable attorneys' fees, expended in collection of such payments.

(Addendum B § 4.2).[1]

17. Puritan acknowledged that ATG's performance of any Professional Services was dependent upon the assistance of Puritan and its personnel:

> Customer … agrees that its personnel will respond in a timely manner to inquiries from ATG staff relative to the Professional Services to be performed under any Statement of Work. Customer acknowledges and agrees that ATG's performance of any Professional Services hereunder is dependant, in part, on Customer's assistance and actions. Accordingly, any dates or time periods relevant to the performance of any Professional Services by ATG shall be extended to account for any delays due to Customer.

(Addendum B § 3).

18. The parties further agreed that upon termination of the Agreement, all amounts due under the Agreement would become immediately due and payable, and that termination of the Agreement would not affect Puritan's payment obligations for services rendered by ATG prior to termination. (MLA §§ 7.1, 7.3, 7.4).

19. With certain exceptions such as breach of the software license, breach of ATG's title to the software, and breach of confidentiality, the parties expressly agreed that neither ATG nor Puritan would be liable for consequential damages:

> EXCEPT FOR PARTY'S BREACH OF ITS OBLIGATIONS UNDER SECTIONS 2, 3, OR 8 IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER UNDER THIS AGREEMENT OR OTHERWISE FOR ANY INCIDENTAL, SPECIAL, PUNITIVE OR CONSEQUENTIAL DAMAGES, LOSS OF PROFITS, LOSS OF DATA OR USE OF DATA OR INTERRUPTION OF BUSINESS.

---

[1] The MLA also includes an attorneys' fees provision: "In the event that ATG must institute legal proceedings to collect fees due under this Agreement, Customer shall be liable for all reasonable attorneys' fees and other costs associated therewith." (MLA § 5.5).

(Addendum B § 10.2 (emphasis in original)).

20.     With the exception of the parties' indemnification obligations, ATG and Puritan also agreed to strict limitations on liability:

> EXCEPT FOR A PARTY'S INDEMNIFICATION OBLIGATIONS UNDER SECTION 12 AND AMOUNTS OWED HEREUNDER, IN NO EVENT WILL EITHER PARTY'S AGGREGATE LIABILITY ARISING OUT OF OR RELATED TO THIS AGREEMENT, WHETHER IN CONTRACT, TORT OR UNDER ANY OTHER THEORY OF LIABILITY, EXCEED THE TOTAL FEES PAID BY CUSTOMER TO ATG UNDER THIS AGREEMENT.

(Addendum B § 10.3 (emphasis in original)).

ATG's Professional Services and Corresponding Invoices

21.     On July 10, 2008, ATG and Puritan executed a Statement of Work for a project involving, among other things, ATG's assistance in the architecture planning of Puritan's website ("SOW #1"). A true and correct copy of SOW #1 is attached hereto as Exhibit B. As required by the Agreement, SOW #1 included a general description of the Professional Services to be performed by ATG and an estimate of the time and materials to be charged. SOW #1 listed Sabir Semerkant as Puritan's primary contact for the project.

22.     Concurrently with executing SOW #1, ATG and Puritan signed a Professional Services Rate Card, whereby Puritan acknowledged the relevant staffing rates to be charged for Professional Services. A true and correct copy of the Professional Services Rate Card is attached hereto as Exhibit C.

23.     At that same time, ATG and Puritan also signed a Training Rate Card, whereby Puritan acknowledged the relevant staffing rates to be charged for training programs to be performed by ATG. A true and correct copy of the Training Rate Card is attached hereto as Exhibit D.

24. ATG commenced work on the Professional Services contemplated by SOW #1 in July 2008. ATG rendered five Professional Services invoices to Puritan and its parent company, NBTY, through September 29, 2008. These invoices were paid in full on a timely basis.

25. On September 29, 2008, ATG and Puritan executed Statement of Work 50115 for a project involving, among other things, ATG's assistance in the delivery, staging, and initial set-up of Puritan's website ("SOW #2"). A true and correct copy of SOW #2 is attached hereto as Exhibit E. As required by the Agreement, SOW #2 included a general description of the Professional Services to be performed by ATG and an estimate of the time and materials to be charged. SOW #2 listed John Carton as Puritan's primary contact for the project.

26. On that same day, ATG and Puritan executed Statement of Work 50150 for a project involving, among other things, ATG's assistance in the configuration, conversion, and testing of Puritan's website ("SOW #3"). A true and correct copy of SOW #3 is attached hereto as Exhibit F. SOW #3 included a general description of the Professional Services to be performed by ATG and an estimate of the time and materials to be charged. SOW #3 also listed John Carton as Puritan's primary contact.

27. ATG commenced work on the Professional Services contemplated by SOW #2 and SOW #3 in early October 2008.

28. ATG provided a sixth Professional Services invoice to Puritan and NBTY on or around October 23, 2008. This invoice was paid in full on a timely basis.

29. From October 29, 2008 through November 28, 2008, while ATG continued work for Puritan on the website project, ATG sent four additional Professional Services

invoices to Puritan. Puritan did not dispute these invoices. However, Puritan did not pay these invoices.

30. Upon information and belief, in December 2008, while ATG continued to work on the website project, Puritan fired Mr. Semerkant and Mr. Carton – Puritan's lead employees on the website project – and approximately fifteen other employees associated with the project. At or around this same time, Puritan informed ATG that the website project was terminated.

31. From December 17, 2008 to January 27, 2009, after Puritan notified ATG that it was cancelling the project, ATG provided Puritan and NTBY with five additional Professional Services invoices, together with one invoice for a training session administered by ATG for the benefit of Puritan pursuant to the Training Rate Card. These invoices all related to services performed by ATG prior to the cancellation of the project. Puritan did not dispute these invoices. However, Puritan did not pay these invoices.

32. Altogether, ten invoices remain undisputed and unpaid:

| **Invoice Number** | **For** | **Inv. Date** | **Amount Due** |
|---|---|---|---|
| PRJ-INV03499 | Professional Services | 29-Oct-08 | $105,560.00 |
| PRJ-INV03594 | Professional Services | 28-Nov-08 | $65,710.00 |
| PRJ-INV03595 | Professional Services | 28-Nov-08 | $14,665.67 |
| PRJ-INV03596 | Professional Services | 28-Nov-08 | $26,482.50 |
| 100008633 | Training | 17-Dec-08 | $1,448.87 |
| PRJ-INV03657 | Professional Services | 22-Dec-08 | $21,730.23 |
| PRJ-INV03659 | Professional Services | 22-Dec-08 | $22,770.00 |
| PRJ-INV03660 | Professional Services | 22-Dec-08 | $54,600.00 |
| PRJ-INV03820 | Professional Services | 27-Jan-09 | $1,122.60 |
| PRJ-INV03826 | Professional Services | 27-Jan-09 | $694.16 |
| **TOTAL** | | | **$314,784.03** |

True and correct copies of these ten invoices are attached hereto as Exhibit G.

<u>ATG's Collection Efforts</u>

33.     ATG continued to request payment of these invoices from Puritan and NBTY throughout the first half of 2009.  On August 12, 2009, representatives of ATG and Puritan met in person to discuss whether ATG could be of any assistance to Puritan's technical needs on a going forward basis.  At this time, ATG requested payment of the unpaid invoices.  Puritan's Chief Executive Officer, Harvey Kamil, raised no specific dispute to the unpaid invoices at this time, but indicated that he would look into the issue.

34.     After receiving no response for several weeks, a representative of ATG called Mr. Kamil on September 8, 2009.  At this time, Mr. Kamil indicated that Puritan would not pay the invoices, vaguely claiming that Puritan was the victim of a major fraud perpetrated by the other vendors of the website project, and that ATG somehow played a role in this fraud.  However, Mr. Kamil refused to discuss any specific accusations against ATG, and instead informed ATG that it should file a lawsuit if ATG wanted to procure payment of the unpaid invoices.

35.     On September 10, 2009, ATG sent a notice of default to Puritan by overnight courier and e-mail.  A true and correct copy of the notice is attached hereto as Exhibit H.  Puritan did not respond within the thirty-day cure period provided by the Agreement.  As of the filing of this Complaint, the ten invoices remain unpaid.

## **COUNT I: BREACH OF CONTRACT**

36.     ATG repeats, realleges, and incorporates by reference as though fully set forth herein each and every allegation contained in Paragraphs 1 through 35 of this Complaint.

37. ATG and Puritan are parties to a valid contract in the form of the Agreement.

38. ATG performed all obligations required of it under the Agreement or was excused from doing do.

39. Puritan breached this agreement by the acts, omissions, and courses of conduct alleged herein.

40. As a result of Puritan's breach, ATG was damaged in the amount of $314,784.03, together with statutory interest and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, ATG requests that the Court:

A. Enter judgment for ATG and against Puritan for damages in the amount of $314,784.03, together with: (1) statutory interest running from the respective due dates of each unpaid invoice; and (2) the costs and reasonable attorneys' fees expended by ATG in this matter as permitted by the Agreement; and

B. Order such further relief as the Court deems just and proper.

Dated: November 12, 2009                    Respectfully submitted,

                                                                      */s/ Michael G. Andrews*
Irwin B. Schwartz (BBO # 548763)
Michael G. Andrews (BBO # 663452)
Business Litigation Associates, P.C.
225 Franklin Street, 26th Floor
Boston, Massachusetts 02110
Phone: 617-421-1800
Fax: 617-421-1810

Counsel for Plaintiff Art Technology Group, Inc.